Hillsborough-southern judicial district
No. 2003-503

THE STATE OF NEW HAMPSHIRE

v.

MICHAEL B. BROBST

Argued: July 14, 2004
Opinion Issued: September 9, 2004

*Kelly A. Ayotte,* attorney general (*Susan P. McGinnis,* assistant attorney general, on the brief and orally), for the State.

*Dawnangela Minton,* assistant appellate defender, of Concord, on the brief, and *Christopher M. Johnson,* chief appellate defender, of Concord, orally, for the defendant.

DALIANIS, J. The State appeals the order of the Superior Court (*Groff,* J.) granting the defendant's motion to dismiss a charge of harassment, *see* RSA 644:4, I(a) (1996), because the court determined that the statute under which the defendant, Michael B. Brobst, was charged is unconstitutionally overbroad in violation of his rights under Part I, Article 22 of the New Hampshire Constitution and the First and Fourteenth Amendments of the Federal Constitution. We affirm.

The limited record reflects the following facts. On December 29, 2002, the defendant made a number of telephone calls to the house where the victim was caring for her younger siblings. On his sixth and final call, the defendant allegedly told her, "[Y]ou're a f——ing bitch and you're going to be a slut just like your mother."

Based upon this call, the defendant was charged with harassment in violation of RSA 644:4, I(a), which provides that:

A person is guilty of a misdemeanor, and subject to prosecution in the jurisdiction where the communication originated or was received, if such person:

(a) Makes a telephone call, whether or not a conversation ensues, with a purpose to annoy or alarm another . . . .

The defendant filed a motion to dismiss arguing that the statute was unconstitutionally overbroad and vague. The trial court granted the defendant's motion on the ground that the statute is facially overbroad and, therefore, did not address the defendant's vagueness argument. N.H. CONST. pt. I, art. 22; U.S. CONST. amends. I, XIV.

The trial court reasoned, "There are numerous instances where an individual may telephone another with a purpose to annoy [or alarm] that person to emphasize an opinion or an idea, or to prompt a desired course of

action." The court concluded, "RSA 644:4, I(a) regulates not only harassment, but these, and other, legitimate communications."

The State argues that RSA 644:4, I(a) is not overbroad because it "does not infringe upon a right to free speech, but rather, regulates conduct and protects the recipient's right to be left alone." We first address the State's claim under the State Constitution and cite federal authority for guidance only. *State v. Ball*, 124 N.H. 226, 231-33 (1983).

█ The purpose of the overbreadth doctrine is to protect those persons who, although their speech or conduct is constitutionally protected, "may well refrain from exercising their rights for fear of criminal sanctions by a statute susceptible of application to protected expression." *New York v. Ferber*, 458 U.S. 747, 768 (1982) (quotation omitted); *see also State v. Briggs*, 147 N.H. 431, 435-36 (2002). While the Constitution "gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere," *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002), the application of the overbreadth doctrine is "strong medicine" to be employed "only as a last resort," *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). Thus, "[i]t remains a matter of no little difficulty to determine when a law may properly be held void on its face and when such summary action is inappropriate." *Broadrick*, 413 U.S. at 615 (quotations omitted).

█ To provide guidance in this area the United States Supreme Court has held that the overbreadth of a statute must be real and substantial, judged in relation to the statute's plainly legitimate sweep. *See id.* "The criterion of 'substantial overbreadth' precludes a court from invalidating a statute on its face simply because of the possibility, however slight, that it might be applied in some unconstitutional manner." *People v. Hickman*, 988 P.2d 628, 635 (Colo. 1999) (quotation omitted); *see also Secretary of State of Md. v. J.H. Munson Co.*, 467 U.S. 947, 964-65 (1984). The substantial overbreadth doctrine applies to constitutional challenges of statutes that prohibit conduct, as well as challenges to those statutes prohibiting "pure speech" and "conduct plus speech." *Hickman*, 988 P.2d at 635.

█ If a statute is found to be substantially overbroad, "the statute must be invalidated unless the court can supply a limiting construction or partial invalidation that narrows the scope of the statute to constitutionally acceptable applications." *Id.*; *see also Broadrick*, 413 U.S. at 613. If, on the other hand, a statute is not "substantially overbroad," then "whatever overbreadth may exist should be cured through case-by-case analysis of

the fact situations to which its sanctions, assertedly, may not be applied." *Broadrick*, 413 U.S. at 615-16.

In *People v. Klick*, the Illinois Supreme Court struck down, as facially overbroad, a virtually identical statute, which provided that a "person commits disorderly conduct when he knowingly . . . [w]ith intent to annoy another, makes a telephone call, whether or not conversation thereby ensues." *People v. Klick*, 362 N.E.2d 329, 330 (Ill. 1977). The court found that "[b]y making the call itself the criminal act—not the language used or the method employed to harass—the legislature ha[d] attempted to avoid infringing on protected speech." *Id.* at 331. The court held, however, that "the means they have chosen to reach unprotected conduct sweeps too broadly, and, in fact, makes criminal conduct protected by the first amendment, *i.e.*, the right to communicate to another in a reasonable manner." *Id.*

The court stated:

> We do not suggest that the first amendment gives one the unlimited right to annoy another, by speech or otherwise. There are, however, many instances when, without breaching the peace, one may communicate with another with the possible intention of causing a slight annoyance in order to emphasize an idea or opinion, or to prompt a desired course of action that one is legitimately entitled to seek. Conceivably, this section could make criminal a single telephone call made by a consumer who wishes to express his dissatisfaction over the performance of a product or service; a call by a businessman disturbed with another's failure to perform a contractual obligation; by an irate citizen, perturbed with the state of public affairs, who desires to express his opinion to a public official; or by an individual bickering over family matters. *First amendment protection is not limited to amiable communications.*

*Id.* at 331-32 (emphasis added).

We agree with the Illinois Supreme Court, and also find that the prohibition of all telephone calls placed with the intent to alarm encompasses too large an area of protected speech. In addition to the examples provided above, such prohibited alarming communications could include a call from a neighbor warning of an approaching tornado or a dangerous animal that escaped from the zoo, or a call from a bill collector demanding that payments be made. In each instance, the intent of the caller is to alarm the other person to prompt a desired course of action;

however, even though the calls are made with the intent to alarm, they are, undoubtedly, legitimate communications.

Certainly the State has a legitimate interest in protecting citizens from the effects of certain types of annoying or alarming telephone calls, such as the "terror caused to an unsuspecting person when he or she answers the telephone, perhaps late at night, to hear nothing but a tirade of threats, curses, and obscenities, or, equally frightening, to hear only heavy breathing or groaning." *Id.* at 331. Additionally, we recognize that the State has a legitimate interest, under certain circumstances, "in preserving the sanctity of the home and the privacy that it affords." *French v. Amalgamated Local Union 376*, 526 A.2d 861, 868 (Conn. 1987). RSA 644:4, I(a) is not, however, limited in scope to these types of unreasonable, unwelcome and unwarranted activities or intrusions. RSA 644:4, I(a) applies to any call made to anyone, anywhere, at any time, whether or not conversation ensues, if the call is placed merely with the intent to annoy or alarm another, which means that the act constituting the offense is complete when the call is made, regardless of the character of conduct that ensues.

We recognize the case of *United States v. Bowker*, 372 F.3d 365, 379 (6th Cir. 2004), in which the Sixth Circuit Court of Appeals recently held that a federal telephone harassment statute survived an overbreadth challenge. In *Bowker*, the court interpreted 47 U.S.C. § 223(a)(1)(C) (2000), which penalizes one who "makes a telephone call or utilizes a telecommunications device, whether or not conversation or communication ensues, without disclosing his identity and with intent to annoy, abuse, threaten, or harass any person at the called number or who receives the communications." The court held that the statute was constitutional because "the focus of the telephone harassment statute is not simply annoying telephonic communications. It also prohibits abusive, threatening or harassing communications. Thus, the thrust of the statute is to prohibit communications intended to instill fear in the victim, not to provoke a discussion about political issues of the day." *Bowker*, 372 F.3d at 379. The court also relied upon the fact that the statute requires anonymity, stating that "because the caller does not identify himself, the speech is more likely to instill fear in the listener and, at a minimum, makes it more difficult for the listener to confront the caller." *Id.* RSA 644:4, I(a), which prohibits all telephone calls placed with the intent to annoy or alarm, and does not require anonymity, differs because it is not similarly directed toward only those communications intended to instill fear in the victim, but instead sweeps far more broadly.

 Simply put, "[t]he First Amendment is made of sterner stuff." *Bolles v. People*, 541 P.2d 80, 83 (Colo. 1975). We conclude that the statute covers a substantial amount of protected First Amendment speech, and that there exists a real likelihood that it may discourage citizens from exercising that speech. Therefore, we hold that RSA 644:4, I(a) is facially overbroad.

The State argues that we should supply a limiting construction to the statute, *see Broadrick*, 413 U.S. at 613; however, it has advanced no persuasive construction, nor can we envision one, that would allow us to limit the scope of the statute without invading the province of the legislature.

Because we conclude that RSA 644:4, I(a) is overbroad under the State Constitution, we need not reach the federal issue. *See Ball*, 124 N.H. at 237. Nor need we address whether the statute is vague.

*Affirmed.*

BRODERICK, C.J., and NADEAU, DUGGAN and GALWAY, JJ., concurred.